**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stephanie Kay STEARNS,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Buck Duane WALKER, aka Roy A.
Allen, Defendant-Appellant.**

**Nos. 82–1545, 82–1558 and 82–1777.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1983.

Decided May 31, 1983.

As Corrected June 17, 1983.

As Corrected on Denial of Rehearing and
Rehearing En Banc Aug. 4, 1983.

Leonard I. Weinglass, Los Angeles, Cal., Earle A. Partington, Honolulu, Hawaii, for defendants-appellants.

Patty Merkamp Stemler, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWNING, Chief Judge, WRIGHT and WALLACE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Eleanor and Malcolm Graham disappeared without a trace in August 1974. Their boat appeared in October in the possession of the appellants, Stearns and Walker, who claimed that the Grahams had drowned. Appellants were charged with theft and convicted, and Walker's conviction was vacated and later dismissed on speedy trial grounds. *See U. S. v. Walker,* 575 F.2d 209 (9th Cir.1978); *U. S. v. Stearns,* 550 F.2d 1167 (9th Cir.1977).

In 1981, when Eleanor Graham's skull and some bones surfaced with evidence of foul play, appellants were indicted for felony (robbery) murder. At issue now are their claims of double jeopardy and res judicata.

## FACTS

The paths of Stearns, Walker, and the Grahams crossed in the summer of 1974 in a lagoon off Palmyra, an uninhabited atoll in the Pacific Ocean. The Grahams arrived in their luxurious 37-foot boat, the Sea Wind, with state-of-the-art technology, outfitted for a two-year cruise.

Stearns and Walker had to be towed into the lagoon because of their sailboat's broken engine. Walker's boat, the Iola, had taken a month to make the trip from Hawaii, about 1,000 miles, although most vessels make it in four to seven days. Without money and provisions, they survived on a diet of coconuts and fish.

In late August the Sea Wind and the Iola were the only vessels left in the lagoon. On August 28th the Grahams made radio contact with Hawaii, pursuant to a prearranged pattern. All later attempts to make radio contact with them were fruitless. They were never heard from again.

In October the Sea Wind was seen in a Honolulu yacht harbor, with Stearns and Walker as its crew. It had been reregistered under a new name, its trim repainted, and its figurehead removed. On October 28th Stearns was arrested for theft of the vessel, and on November 1st a search team set out for Palmyra. The group found no clue of the fate of the Grahams or of the Iola, and no evidence of foul play. Walker, who was apprehended in November, and Stearns claimed that the couple had drowned, and offered conflicting explanations for how they came to possess the Sea Wind.

Appellants were indicted on charges of theft and interstate transportation of stolen property. Walker later was dismissed from the first indictment and indicted separately. Both appellants were convicted. Walker's theft conviction was vacated because of an erroneous jury instruction. His theft charge eventually was dismissed on speedy trial grounds.

Mrs. Graham's remains surfaced in 1981. A couple visiting Palmyra raised a sunken airplane rescue boat. Two weeks later, they found Mrs. Graham's skull and some bones on a coral shelf nearby. A metal box that had been closed with electrical wire still held at least one of the bones. The metal box and the bones had been subjected to very high temperatures.

Stearns and Walker were indicted for felony murder. This appeal is from the district court's denial of their motions to dismiss the indictments on grounds of double jeopardy and res judicata.

## I. *An Exception to the Double Jeopardy Clause*

Appellants contend that their felony-murder prosecutions are barred by the Double Jeopardy Clause. They argue that because theft is a lesser-included offense of felony (robbery) murder, the theft prosecutions preclude the present prosecutions.

The Double Jeopardy Clause provides that "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This guarantee applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1; *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

■ As a general rule, trial on an offense is barred by prior trial and conviction of a lesser-included offense based on the same transaction. *See Illinois v. Vitale,* 447 U.S. 410, 419–21, 100 S.Ct. 2260, 2266–67, 65 L.Ed.2d 228 (1980). For purposes of this appeal, the government concedes that the thefts charged were lesser-included offenses of felony (robbery) murder. *Cf. Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (robbery prosecution barred by conviction for felony (robbery) murder). Therefore, these prosecutions are barred unless we apply an exception to that rule.

The Supreme Court has suggested an exception that would permit later prosecution

> where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge . . . have not been discovered despite the exercise of due diligence.

*Brown v. Ohio,* 432 U.S. 161, 169 n. 7, 97 S.Ct. 2221, 2227 n. 7, 53 L.Ed.2d 187 (1977); *see Illinois v. Vitale,* 447 U.S. at 420 n. 8, 100 S.Ct. at 2267 n. 8; *Jeffers v. United States,* 432 U.S. 137, 152, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977). Several lower courts have noted this exception, but none has relied on it to sustain a later prosecution. *See United States v. Solano,* 605 F.2d 1141, 1144 n. 1 (9th Cir.1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980); *United States v. Stricklin,* 591 F.2d 1112, 1123–24 & n. 5 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979); *United States v. Allen,* 539 F.Supp. 296, 318–19 (C.D.Cal.1982).

Two policies served by the Double Jeopardy Clause are relevant: prevention of multiple punishments for one offense, and protection from harassment and from the physical, psychological, and financial burdens of multiple prosecutions. *See Howard v. United States,* 372 F.2d 294, 299 & n. 10 (9th Cir.), *cert. denied,* 388 U.S. 915, 87 S.Ct. 2129, 18 L.Ed.2d 1356 (1967). We must balance against them the societal interest in imposing just punishment on the guilty. *Id.*

Because Stearns has been punished already for the theft of the Sea Wind, her interest in avoiding multiple punishments must be considered. The government concedes that she should not be punished for the underlying theft as well as for felony murder. *See Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Multiple punishment will be avoided, however, provided she receives credit for the time already served for theft, if she is sentenced for murder. *Cf. North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (in imposing new sentence on reconviction, must give credit for punishment already served for same offense).

Appellants' interest in protection from harassment is served adequately by the conditions of this exception. It applies only if relevant facts are discovered after the first prosecution. The government may not take advantage of it unless it acted with due diligence at the outset but was unable to discover additional facts necessary to sustain the greater charge. These requirements eliminate the possibility that the government could manipulate the exception in order to bring multiple prosecutions for purposes of harassment.

Under these circumstances, appellants' interest in avoiding the physical, psychological, and financial burdens of multiple prosecutions is outweighed by society's interest in punishment of the guilty.

■ We conclude that the felony-murder prosecutions here are not prohibited by the Double Jeopardy Clause if the government was unable to prosecute the greater charge at the outset because the facts to sustain that charge were not discovered despite the exercise of due diligence.

## II. The Exception Applied

Because the facts here satisfy both conditions of the exception, the Double Jeopardy Clause does not bar these prosecutions. The government exercised due diligence in its early investigation. It used ordinary diligence under the unusual circumstances. It was then unable to prosecute on the greater charge because the additional facts necessary to sustain it were not discovered.

■ The district court's findings on these issues are findings of fact, which we will sustain unless clearly erroneous. *Cf. United States v. Hart,* 546 F.2d 798, 801–02 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977) (whether state did everything reasonably necessary to produce informant is question of fact).

The court reviewed the nature and extent of the search in detail. *United States v. Walker,* 546 F.Supp. 805, 808–09, 811–12 (D.Hawaii 1982). The investigative team of nine persons included two FBI agents, three Coast Guard divers, a Coast Guard officer, and a man who had been on Palmyra while the Grahams, Stearns, and Walker were there.

They searched campsites, buildings and fixtures on the abandoned naval base, areas of the lagoon frequented by those involved, and the land, which they searched on foot and from a dinghy inside the lagoon. "[T]he search was directed to every area most likely to contain evidence of the Grahams' disappearance both on land and in the lagoon. Additionally, the search was extended to cover virtually every accessible area of the atoll." *Id.* at 813.

A more thorough search may have been possible. Bloodhounds and an expert on discovery of bodies buried on land might have been used. Because the divers used only scuba gear, the search of the lagoon bottom was limited by depth, current, visibility, and sharks. A complete search of the lagoon, however, would have required a diving vessel and an extraordinary amount of time, effort, and money. Due diligence did not require these extraordinary methods at this remote site, based on the facts known at the time.

Although the government suspected foul play when it discovered the Sea Wind in appellants' possession, the search produced no evidence of it. The Grahams' campsite was found undisturbed, and neither Palmyra nor the water around it yielded any evidence of the Grahams' fate. The district court's conclusion that the government did not have the facts necessary to sustain the murder charge at the outset was not clearly erroneous.

## III. Res Judicata and Collateral Estoppel

Walker contends that the dismissal of his second theft indictment is a bar to the felony murder prosecution because of the doctrine of res judicata, which applies to criminal proceedings. *Sealfon v. United States,* 332 U.S. 575, 578, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948).

■■ However, res judicata applies only when one seeks a retrial of the same cause of action. *See* 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 405[1] (2d ed. 1982). Dismissal of the theft indictment does not bar prosecution for felony murder.

■ The doctrine of collateral estoppel is sometimes classified as a facet of res judicata. *Id.* Under that doctrine, matters actually litigated and decided in an earlier prosecution are not subject to dispute in a second prosecution, even for a separate offense. *Sealfon,* 332 U.S. at 578, 68 S.Ct. at 239; *Cosgrove v. United States,* 224 F.2d 146, 150 (9th Cir.1954).

■ Walker's second theft indictment was dismissed for violation of his right to a speedy trial. That dismissal was not related to the facts that the government seeks to establish here. Therefore, collateral estoppel does not bar the present prosecution. *Cf. United States v. Rivero,* 532 F.2d 450, 457 (5th Cir.1976) (dismissal of indictment does not insulate underlying facts from further use).

Both orders appealed from are AFFIRMED. The mandate will issue at once.