[No. F002518. Fifth Dist. June 6, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN ROBIN PENDERGRASS, Defendant and Appellant.

64

## COUNSEL

Arthur R. Collins, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally, Thomas Y. Shigemoto and Jane Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—John Robin Pendergrass appeals from a judgment (order granting probation) entered on a jury verdict finding him guilty of cultivating marijuana (Health & Saf. Code, § 11358) and of possession of marijuana (Health & Saf. Code, § 11357, subd. (c)).

### FACTS

On October 20, 1982, Officer Finley went with other officers to 1637 Dallas Street in Modesto to serve a search warrant. As Officer Finley and Agent Matt approached the front door of the residence they were met by the codefendant, John Arrington. Arrington indicated that he lived in the residence. The officers informed Arrington of the search warrant; other officers then secured Arrington while Finley and Matt went to the doorway of the residence, stated that they had a search warrant for the residence, identified themselves as police officers, and then made entry into the residence. Appellant and Marilyn Green were found inside the residence and were shown the search warrant, which was also read to them.

The residence and environs were searched, and 11 large marijuana plants and 5 smaller ones were found growing in a lean-to addition located on the northeast side of the residence. Some of the plants were six to eight feet tall. The plants were being watered and cultivated. Marijuana was found in all of the rooms, including each bedroom, the kitchen, the living room and the laundry area. In total, 74 pounds of growing marijuana, 25 percent of which would be usable, and 9 bags of dried marijuana, having a gross weight of 25 pounds, were found. It was stipulated that appellant occupied the northwest bedroom, and codefendant Arrington the northeast bedroom. Nine bags of dried, cured marijuana were found in a large grocery bag in appellant's bedroom, together with a set of scales.

Officer Finley testified that the normal amount that people would buy or sell in a single transaction on the street would be anywhere from a quarter-pound down to a quarter-ounce "lid," and that a lid would sell for approximately $25 and would make between 25 and 30 heavy marijuana cigarettes or 50 light marijuana cigarettes. Officer Finley also testified that the scales found in appellant's closet would be used to weigh the marijuana. The value of the marijuana found was estimated to be $55,500.

The premises and the items seized were not processed for fingerprints. A calendar was seized, but there were no "tote" sheets, and no large amount of money was found in the residence. The calendar had entries on it that indicated that it might have something to do with the marijuana. None of

the marijuana found had been packaged for sale in plastic bags. In Officer Finley's opinion, the quantity of marijuana found indicated that it was not for personal use.

Appellant was advised of and waived his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights following his arrest. When asked about the marijuana that was being cultivated and processed inside the house, appellant said he did not know anything about it but he had assisted in the watering of the plants. He said he did not know who the marijuana belonged to. When asked about the large quantity of marijuana found in his closet, appellant stated he did not want to talk about it.

### *Defense*

Testifying for the defense were the defendant, Pendergrass, Arrington and Cheryl Arrington, wife of the codefendant and sister of appellant. Appellant introduced evidence to show that he seldom smoked marijuana, that he was seldom at the house, that although his belongings were in the residence most of the time he did not maintain a permanent residence there, and that all marijuana at the house belonged to the codefendant, Arrington. Appellant and Arrington frequently argued over marijuana. Appellant kept living there only because he could not afford to go anywhere else. Ms. Arrington and the codefendant testified that appellant had nothing to do with the marijuana in the house. Codefendant Arrington admitted that he owned all of the marijuana found at the house; that he was the sole caretaker of the growing plants; that he alone picked the leaves and dried them; and that appellant never watered any of the plants. He had seen appellant smoke marijuana on occasion, but it was not provided by Arrington.

Appellant knew that Arrington was growing and cultivating marijuana. But appellant denied that he or his sister watered the plants. He admitted smoking marijuana on occasion when codefendant Arrington offered him a "joint." Appellant admitted that he lied to Officer Finley when he told him he did not know whose marijuana plants they were. But appellant denied he told Officer Finley that he watered the plants.

Appellant further testified that he and the codefendant were the sole occupants of the residence in October. However, he could not recall if his sister was still there on October 5. Appellant's sister told him that the calendar entries for October 5 and 7, which state "attempt," were hers. Codefendant Arrington did not believe the entry "attempt" of October 5 was his wife's. Appellant denied that any of the calendar entries were his.

The house had only two closets, both of which were located in appellant's bedroom; all persons in the house used them.

DISCUSSION

I. *Nondisclosure of Informant's Identity.*

By motion at the preliminary hearing appellant sought disclosure of the identity of the confidential informant, information from whom was used by the police in support of the issuance of the search warrant. After an in camera hearing, the motion was denied.

The motion was not renewed in any form in the superior court.

■ Appellant seeks to raise in this court the propriety of the denial in the municipal court. We hold the issue is not cognizable on direct appeal since this court reviews alleged errors of the superior court, not the municipal court, and the issue is waived where the appellant did not raise in the superior court the failure to disclose the identity of the informant. (*Rugendorf* v. *United States* (1964) 376 U.S. 528 [11 L.Ed.2d 887, 84 S.Ct. 825]; *People* v. *Talley* (1967) 65 Cal.2d 830, 836, fn. 1 [56 Cal.Rptr. 492, 423 P.2d 564]; *Coy* v. *Superior Court* (1959) 51 Cal.2d 471, 473 [334 P.2d 569]; *People* v. *Rodgers* (1976) 54 Cal.App.3d 508, 516-517 [126 Cal.Rptr. 719].) The normal method of raising the denial of the motion by the municipal court is by way of a Penal Code section 995 motion in the superior court. A failure to move to set aside the information in the superior court bars the defense from questioning on appeal any ruling made at the preliminary hearing. (Pen. Code, § 996; *People* v. *Harris* (1967) 67 Cal.2d 866, 868, 870-871 [64 Cal.Rptr. 313, 434 P.2d 609].)[1]

Appellant relies upon a statement taken out of context from *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812, 819 [330 P.2d 39]: "A defendant cannot raise the problem of nondisclosure in the appellate courts when he did not seek disclosure at the trial or preliminary hearing . . ." to support his argument that the denial of the motion to disclose in the municipal court may be raised in the Court of Appeal without having raised the issue in the superior court.

The statement is loose dicta because in *Priestly* the defendant raised the issue in both the municipal court and superior court—in the former by way of a motion to disclose, and in the latter by way of a motion to suppress.

---

[1] Failure to file a Penal Code section 995 motion in the superior court would not preclude a defendant from filing a new motion to disclose in the superior court.

In light of the authority to the contrary and the illogic of concluding otherwise, we do not interpret the statement in *Priestly* as authority for the proposition that the appellate court on direct appeal should review errors committed in the municipal court absent a Penal Code section 995 motion in the superior court.

Accordingly, we need not reach the merits of the motion.

II. *Beeman (People v. Beeman (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318]) Error.*

■ One of the People's theories as to appellant was that he aided and abetted his codefendant, Arrington, in cultivating the marijuana. Appellant argues that the trial court erred in failing to properly instruct the jury as to the mental state required by an aider and abetter as set forth in *People v. Beeman, supra,* 35 Cal.3d 547. The *Beeman* court suggested an instruction which informed the jury ". . . that an appropriate instruction should inform the jury that a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*Id.,* at p. 561.)[2]

In *Beeman* the court was concerned with an unmodified version of CALJIC No. 3.01[3] which did not include the element of "intention." However, in accordance with the suggestion in *People v. Yarber* (1979) 90 Cal.App.3d 895 [153 Cal.Rptr. 875], the trial court in this case modified CALJIC No. 3.01 by inserting the word "intentionally" between "he" and "aids," so the instruction read: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he *intentionally* aids, promotes, encourages, or instigates by act or advice the commission of such crime." (Italics added.)

Relying upon dicta in *Beeman, supra,* at least two Court of Appeal cases have, without analysis, found the *Yarber* instruction inadequate. (See *People v. Garewal* (1985) 173 Cal.App.3d 285, 298 [218 Cal.Rptr. 690]; *People v. Henderson* (1985) 163 Cal.App.3d 1001, 1009-1010 [209 Cal.Rptr. 883].)

---

[2]*Beeman* is retroactive as to any case pending at the time it was decided. (*People v. Croy* (1985) 41 Cal.3d 1 [221 Cal.Rptr. 592, 710 P.2d 392].) Because this case has been pending on appeal since May 16, 1983, *Beeman* governs.

[3]CALJIC No. 3.01, at the time pertinent herein, provided: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime."

The dicta relied upon was the following statement in *People* v. *Beeman, supra,* 35 Cal.3d at pages 560-561: "Both the instruction suggested by *Yarber* [citation] . . . and the version of CALJIC [No. 3.01] used prior to 1974 . . . seek to include the required intent element. However, both are sufficiently ambiguous to conceivably permit conviction upon a finding of an intentional act which aids, without necessarily requiring a finding of an intent to encourage or facilitate the criminal offense."

Upon analysis, however, we conclude that the well-reasoned opinion in the recent case of *People* v. *Forbes* (1985) 175 Cal.App.3d 807 [221 Cal.Rptr. 275] (review den. Mar. 16, 1986) announces the correct law. We will follow that case. In *Forbes,* the *Yarber* instruction was given by the trial court, and the court directly held that it was adequate. We quote extensively from the *Forbes* opinion as it is dispositive of this case.

"In holding the unmodified CALJIC No. 3.01 to be inadequate, the *Beeman* court proposed a model instruction of its own making. It had no occasion to determine whether the *Yarber* instruction would have been adequate, that instruction having been refused by the trial court. In choosing to formulate its own instruction, however, the court commented that the *Yarber* instruction and a pre-1974 version of CALJIC No. 3.01 were both 'sufficiently ambiguous to conceivably permit conviction upon a finding of an intentional act which aids, without necessarily requiring a finding of an intent to encourage or facilitate the criminal offense.' (*Beeman, supra,* 35 Cal.3d 547, 561.) The court did not elaborate on the perceived ambiguity or attempt in any way to distinguish between the *Yarber* instruction and the former CALJIC instruction, which, instead of containing the word 'intentionally,' used the vague phrase 'knowingly and with criminal intent.' (*Id.,* at p. 555.)

"We do not view the *Beeman* court's comment as indicating that the giving of a *Yarber* instruction constitutes error. The instruction is a vast improvement over the unmodified CALJIC No. 3.01 and, we believe, adequately conveys the requisite intent. Stripped to its essentials, the *Yarber* instruction requires that the person, by his or her act or advice with knowledge of the unlawful purpose of the perpetrator, '*intentionally aids, promotes, encourages or instigates*' the crime. With all due respect, we fail to see how the instruction even 'conceivably' permits a finding of an intentional act without a finding of intent to encourage or facilitate. The adverb 'intentionally' immediately precedes the verbs 'aids, promotes, encourages or instigates'; it does not modify the nouns 'act or advice' and, indeed, could not do so gramatically.

"What concerned the court in *Beeman* was that an improperly instructed jury could find it sufficient that the defendant *intentionally acted* and thereby

facilitated or encouraged the crime, but without meaning to. Thus, conviction could result from an intentional act which, by *negligence* or *accident*, aided the commission of the crime. (*Beeman, supra,* 35 Cal.3d 547, 560.) However, the *Yarber* instruction's inclusion of the word 'intentionally' precludes that result. One cannot, in common understanding, intentionally aid, intentionally promote, intentionally encourage *or* intentionally instigate the commission of a crime by mere negligence or accident." (*People* v. *Forbes, supra,* 175 Cal.App.3d at pp. 814-816; fn. omitted.)

We adopt the reasoning of *Forbes* and hold the instruction adequate. It follows there was no reversible error. Accordingly, it is unnecessary to address whether, if there was error, it was reversible under *People* v. *Croy, supra,* 41 Cal.3d 1.

The judgment (order granting probation) is affirmed.

Franson, J., and Hoover, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.