[No. H036159. Sixth Dist. Dec. 6, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LYNN WITCRAFT, Defendant and Appellant.

[No. H036768. Sixth Dist. Dec. 6, 2011.]

In re DAVID LYNN WITCRAFT on Habeas Corpus.

Counsel

Dallas Sacher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin, Seth K. Schalit and Alisha M. Carlile, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

RUSHING, P. J.—

## I. Statement of the Case

Defendant David Lynn Witcraft pleaded no contest to causing a false or fraudulent insurance claim to be filed. (Pen. Code, § 550, subd. (a)(1).)[1] On appeal from the judgment, he claims defense counsel provided ineffective assistance by failing to renew a motion to dismiss the charge.[2]

Defendant also filed a petition for a writ of habeas corpus in which he raises the same claim. We ordered that the petition be considered with the appeal, and we shall resolve both the appeal and petition in this decision.

We affirm the judgment on appeal. However, we issue an order for the Attorney General to show cause why defendant is not entitled to relief on habeas corpus.[3]

## II. Facts and Procedural History[4]

On February 5, 2009, defendant was driving a white Ford Ranger pickup truck when he rear-ended Mary Jo Greenlee, injuring her and damaging her

---

[1] All unspecified statutory references are to the Penal Code.

[2] Defendant obtained a certificate of probable cause from the trial court to raise this claim despite his plea. (§ 1237.5, subd. (b).)

[3] Previously, we issued an opinion in this case affirming the judgment and denying the writ petition. However, we granted defendant's petition for rehearing to reconsider our decision concerning his writ petition.

[4] Our background summary of facts and procedural history is based on the reporter's and clerk's transcripts in this case and on a number of documents in *People v. Witcraft* (Super. Ct. Santa Clara County, No. CC939004) namely the complaint, the clerk's minutes of the change of plea and sentencing hearings, and the transcript of the preliminary hearing.

Mercedes. Defendant gave his insurance information to Mrs. Greenlee. Officer Manual Ochoa of the San Jose Police Department responded to a call about the accident. He noted defendant's license plate, which had a current registration sticker, and asked for defendant's driver's license, registration, and proof of insurance, all of which defendant provided. The registration information indicated that his vehicle was owned by Sears and Roebuck Company (Sears). Defendant's insurance company was Esurance, and the insurance card indicated that it covered a Ford vehicle.

Mrs. Greenlee's husband, Officer Stephen Greenlee of the San Jose Police Department, also arrived at the scene and observed defendant's Ford Ranger, its license plate, and the damage to his wife's car.

On February 6, Mrs. Greenlee called Esurance, reported the accident, and made a claim (No. 99343) against the policy identified on defendant's insurance card. On February 7, Officer Greenlee called Esurance and learned that although the insurance policy number was correct, that policy did not cover a vehicle with the license plate number recorded in Officer Ochoa's police report.[5] Officer Greenlee investigated further. He noticed that defendant was not the registered owner of the vehicle whose license plate was on the Ford Ranger. He then spoke to a manager at Sears and advised him that a Sears vehicle had been involved in an accident. The manager denied this and brought Officer Greenlee out to the vehicle yard. Parked there was a Sears Ford van bearing a license plate with the same number as that recorded in Officer Ochoa's police report. The plate did not have a current registration sticker. Officer Greenlee also noticed that one of the van's plates was missing. The manager told Officer Greenlee that he had given the van's registration to defendant along with a new registration sticker to be put on the license plate. He also informed Officer Greenlee that defendant had later been terminated.[6]

On February 9, Heran Flores, an Esurance claims representative, called defendant to follow up on Mrs. Greenlee's claim and secure a recorded statement about the accident. Defendant said that he had been driving a rented Ford van. Defendant promised to forward a copy of the rental contract, but he never did, and Esurance was unable to obtain one. Accordingly, Esurance denied Mrs. Greenlee's claim.

On April 2, 2009, the Santa Clara County District Attorney filed a complaint (*People v. Witcraft, supra,* CC939004) charging defendant with receipt

---

[5] Defendant's policy had covered the Ford Ranger. However, defendant had the Ford Ranger removed from the policy in July 2008. Thus on the day of the accident, the Ranger was not covered.

[6] Defendant had worked for Sears repairing appliances.

of stolen property—i.e., the license plate—(count 1); providing false identification to a peace officer (count 2); presenting a false registration card (count 3); and failing to provide proof of automobile insurance (count 4). (§§ 496, subd. (a), 148.9; Veh. Code, §§ 4462, 4462.5, 16028, subd. (a).) At the preliminary hearing, count 2 was amended to allege providing false information (Veh. Code, § 31)—i.e., the proof of insurance and statements that the Ford Ranger was covered. On July 29, 2009, defendant pleaded no contest to the charges as amended.

On December 11, 2009, the district attorney filed a second complaint (case No. CC963746) alleging that on February 5 and 9, defendant presented a false insurance claim or caused a false claim to be filed, in violation of section 550, subdivision (a)(1). On April 29, 2010, before the preliminary hearing, defendant filed a motion to dismiss the complaint on the ground that the prosecution was barred under section 654. On June 5, the trial court denied the motion, and on July 30, after the preliminary hearing, defendant was held to answer. On September 20, defendant pleaded no contest to the charge.

### III. The Appeal

Defendant contends that counsel rendered ineffective assistance by failing to renew the motion to dismiss *after* the preliminary hearing, an omission that forfeited any claim that the second case was barred by section 654.

■ To obtain reversal due to ineffective assistance, a defendant must first show "that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [108 Cal.Rptr.2d 291, 25 P.3d 519]; see *Strickland v. Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 104 S.Ct. 2052].) Second, the defendant must show that there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham, supra,* 25 Cal.4th at p. 1003.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* 466 U.S. at p. 694; see *People v. Staten* (2000) 24 Cal.4th 434, 450–451 [101 Cal.Rptr.2d 213, 11 P.3d 968].)

Because the defendant bears this burden, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211 [135 Cal.Rptr.2d 553, 70 P.3d 981].) Moreover, where the record on direct appeal "does not show the reason for counsel's challenged

actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569 [106 Cal.Rptr.2d 575, 22 P.3d 347].) Under such circumstances, a claim of ineffective assistance is generally rejected on direct appeal and more properly raised in a petition for habeas corpus, which can include declarations and other information outside the appellate record that reveal the reasons for the challenged conduct. (*People v. Mayfield* (1993) 5 Cal.4th 142, 188 [19 Cal.Rptr.2d 836, 852 P.2d 331] ["tactical choices presented . . . on a silent record" are "better evaluated by way of a petition for writ of habeas corpus" and will be rejected on direct appeal].)

The record on appeal does not reveal why trial counsel failed to renew the motion to dismiss. However, defendant has included an explanatory letter from counsel as an exhibit to the petition for habeas corpus.

Under the circumstances, we shall affirm the judgment on appeal and address defendant's claim in connection with our review of the habeas corpus petition.

## IV. THE HABEAS CORPUS PETITION

■ To warrant the issuance of an order to show cause, defendant bears the burden of stating a prima facie case for habeas corpus relief. (*In re Bower* (1985) 38 Cal.3d 865, 872 [215 Cal.Rptr. 267, 700 P.2d 1269].)

In his letter, trial counsel explained that after the preliminary hearing, he did not renew the motion because he thought the initial motion would preserve for appeal defendant's claim under section 654.

■ Before unification of the superior and municipal courts, the failure to renew a motion that had been denied before the preliminary hearing forfeited the claims raised in the motion.[7] (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896–897 [150 Cal.Rptr. 910, 587 P.2d 706] [suppression motion]; *People v. Matthews* (1986) 183 Cal.App.3d 458, 462–463 [228 Cal.Rptr. 316] [motion for self-representation]; *People v. Pendergrass* (1986) 182 Cal.App.3d 63, 67

---

[7] "As a result of a 1988 primary election, the California voters enacted Proposition 220 under which it became permissible for municipal and superior courts to become unified and which authorized a state Constitution amendment reflecting the modification of the jurisdiction of trial and appellate courts. (Cal. Const., art. VI, §§ 10, 11.) ' "On unification of the trial courts in a county, all causes will be within the original jurisdiction of the superior court. . . . In a county in which the courts have unified, the superior court has original jurisdiction of limited civil cases, but these cases are governed by economic litigation procedures, local appeal, filing fees, and the other procedural distinctions that characterize these cases in a municipal court." [Citations.]' [Citation.]" (*Giorgianni v. Crowley* (2011) 197 Cal.App.4th 1462, 1482 [129 Cal.Rptr.3d 546].)

[226 Cal.Rptr. 851] [motion to disclose confidential informant].) This forfeiture rule has survived the unification of the trial court. (See *People v. Hinds* (2003) 108 Cal.App.4th 897, 900 [134 Cal.Rptr.2d 196]; *People v. Hoffman* (2001) 88 Cal.App.4th 1, 2–3 [105 Cal.Rptr.2d 372]; *People v. Hart* (1999) 74 Cal.App.4th 479, 485–486 [86 Cal.Rptr.2d 762].)

Defendant's claim of ineffective assistance hinges on whether a renewed motion to dismiss would have been granted. If it would have, then counsel's failure to have renewed it after the preliminary hearing would demonstrate ineffective assistance. The omission could not have reflected a reasonable tactical decision; and its prejudice would be obvious, in that defendant unnecessarily faced a second prosecution.

## A. Applicable Principles

■ Section 654 provides in relevant part: "An acquittal or conviction and sentence under any one [provision of law] bars a prosecution for the same act or omission under any other." (§ 654, subd. (a).) In *Kellett v. Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206] (*Kellett*), the seminal case interpreting the statutory bar against multiple prosecutions, the Supreme Court held that when "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance is permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Id.* at p. 827, fn. omitted.) The purpose of the *Kellett* rule is to prevent needless harassment and the waste of public funds through multiple trials based on the same underlying facts. (*Ibid.*)

There is an exception to the *Kellett* rule "where the prosecutor ' " 'is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.' " ' " (*People v. Davis* (2005) 36 Cal.4th 510, 558 [31 Cal.Rptr.3d 96, 115 P.3d 417] (*Davis*).) For this exception to apply, however, the prosecution must have actually exercised due diligence in searching for additional evidence. (*Id.* at p. 558.)

■ Moreover, "*Kellett* does not require, nor do the cases construing it, that offenses committed *at different times and at different places* must be prosecuted in a single proceeding." (*People v. Cuevas* (1996) 51 Cal.App.4th 620, 624 [59 Cal.Rptr.2d 146]; see *People v. Ward* (1973) 30 Cal.App.3d 130, 133, 136–137 [105 Cal.Rptr. 67]; *People v. Douglas* (1966) 246 Cal.App.2d 594, 596, 599 [54 Cal.Rptr. 777].) Rather, the *Kellett* rule is limited to cases

where the prosecutor has or can reasonably obtain sufficient evidence to sustain a conviction. (*Davis, supra*, 36 Cal.4th at p. 558.) To "give practical meaning to the interpretation" of section 654 by *Kellett*, courts have developed and applied "an 'evidentiary' test as a guide to determining if the *Kellett* criterion (whether the same act or course of conduct plays 'a significant part' with respect to each crime) is met. . . . '[W]hat matters, [rather than abstract definitions of the elements of the respective crimes or the precise moment when one crime was completed] is the totality of the facts, examined in light of the legislative goals of [Penal Code] sections 654 and 954, as explained in *Kellett*.' More specifically, if the evidence needed to prove one offense necessarily supplies proof of the other . . . the two offenses must be prosecuted together, in the interests of preventing needless harassment and waste of public funds." (*People v. Hurtado* (1977) 67 Cal.App.3d 633, 636 & fn. 1 [136 Cal.Rptr. 774], quoting *People v. Flint* (1975) 51 Cal.App.3d 333, 338 [124 Cal.Rptr. 269]; accord, *People v. Valli* (2010) 187 Cal.App.4th 786 [114 Cal.Rptr.3d 335].)

## B. Discussion

Defendant notes that all the charges in the first case arose from his course of conduct on February 5. That course of conduct included providing false insurance information to Mrs. Greenlee and Officer Ochoa, and that particular conduct was the factual basis underlying his conviction under Vehicle Code section 31 for providing false information to a peace officer. Defendant asserts that giving Mrs. Greenlee false insurance information after the accident with the implication that his insurance would provide coverage *caused* her to file what turned out to be a false claim against his Esurance policy. Thus, defendant argues that because the evidence of his conduct on February 5 was essential proof of liability in both cases, section 654 and the *Kellett* rule barred the second prosecution.

The Attorney General claims that defendant is mistaken about the conduct underlying the charge in the second case. According to the Attorney General, the charge under section 550, subdivision (a)(1) for presenting a false insurance claim was not based on defendant's course of conduct on February 5 but rather on defendant's subsequent false statements on February 9 to the Esurance representative about driving a rental vehicle at the time of the accident. Thus, because the second case was based on conduct separate and different from the conduct underlying the first case, further prosecution was permisssible.

We reject the Attorney General's claim. The record establishes that after the preliminary hearing, the prosecution for violating section 550, subdivision (a)(1) could not have been based on defendant's false statements

to the Esurance representative; rather, the case proceeded on the evidence that defendant gave Mrs. Greenlee false insurance information which caused her to file a false claim with Esurance.

In his motion to dismiss, defendant claimed the second case was barred because the alleged violation of section 550, subdivision (a)(1) arose from the same course of conduct for which he was prosecuted in the previous case, and therefore the second prosecution would involve recycling the same evidence, including that he gave false insurance information to Mrs. Greenlee and Officer Ochoa. He also claimed that all of the facts necessary to prosecute him for presenting a false claim, including his false statements to the Esurance representative just days after the accident, were available and could, and should, have been discovered had the prosecutor exercised due diligence.

In opposition to the motion, the prosecutor asserted that the charges under section 550 were based *solely* on the fact that defendant made false statements to Esurance days after the accident, and but for those statements, there would have been no prosecution under section 550. Thus, the evidence necessary to prove the violation of section 550—an insurance policy and false and material statements—was separate and distinct from that used to prosecute the crimes charged in the first case.

At the hearing on the motion, the parties reiterated their positions, and the court denied the motion. It adopted the prosecutor's theory that the second case was based on different acts committed at a different time than the acts underlying the first case. The case then proceeded to the preliminary hearing.

At the preliminary hearing, Officer Ochoa testified about what happened when he arrived at the scene of the accident on February 5, including that defendant gave him registration and insurance information and that later investigation of the license plate on the Ford Ranger revealed Sears to be the registered owner. Paul Campos, field investigator for Esurance, testified that defendant had a standard automobile insurance policy for property damage and personal injury that he may cause while driving a *covered* vehicle. He said that on February 6, Mrs. Greenlee filed a claim against defendant's Esurance policy based on the information defendant had given her. He noted that at that time, defendant's Ford Ranger was not covered because he previously had removed it from his policy. Later, an Esurance representative called defendant about Mrs. Greenlee's claim to discuss the accident. Their conversation was recorded and transcribed.

At this point in the hearing, the prosecutor asked Mr. Campos what defendant had said to the representative. Defense counsel raised a hearsay

objection to such testimony and the transcript. The court sustained the objection as to both. Mr. Campos then testified that as a result of defendant's statements to the representative, he further investigated Mrs. Greenlee's claim and determined that it would have been covered if what defendant had said was true. More specifically, Mr. Campos said that if defendant had provided documentation to show that the accident involved a rental car, then Mrs. Greenlee's claim would have been covered. Defense counsel raised a hearsay objection to Mr. Campos's last statement. The prosecutor argued that he was not offering it for the truth but only to explain what the insurance company did with Mrs. Greenlee's claim. The court accepted the testimony for that limited nonhearsay purpose and not for the truth of its content.[8] Mr. Campos continued and said that defendant had told the Esurance representative that he had been driving a rental van when the accident happened, and he offered to provide the rental contract. He never did and the company was unable to get a copy. Mr. Campos conceded that defendant did not himself file or present any claim under his policy related to the accident; nor did he sign or submit any documents related to Mrs. Greenlee's claim. Nevertheless, Mr. Campos opined that defendant's statements to the Esurance representative appeared to be an implicit representation that Mrs. Greenlee's claim was covered. Ultimately, however, her claim was denied.

At the close of testimony, defense counsel claimed that the prosecutor had not shown that defendant knowingly presented or knowingly caused Mrs. Greenlee to present a false claim to Esurance. He argued that although defendant gave Mrs. Greenlee bad insurance information, he did not expect her to make a claim or intend to defraud anyone.

The prosecutor noted that section 550, subdivision (a)(1) proscribed personally presenting a false claim or causing another to do so. Although previously, in opposition to the motion to dismiss, the prosecutor had argued that but for the false statements to the Esurance representative there would be no second prosecution, the prosecutor now offered two theories of liability. The prosecutor argued that defendant could be held liable because he gave Mrs. Greenlee false information and "*caused* [her] to make a claim against Esurance based on the representation that the vehicle he was driving was covered" (italics added); alternatively, he argued that "what [defendant] caused here is to be—he claimed that he had a vehicle that was rented that would have been covered, and it was not covered because he wasn't driving a rented vehicle, from the evidence." "So any way you look at it, it falls within [the statute]."

Presumably because there was no evidence that defendant directly presented an insurance claim, false or otherwise, and because the hearsay

---

[8] It also admitted the transcript of defendant's conversation for that purpose.

evidence of his false statements about a rental van was admitted only to help explain Esurance's subsequent actions on Mrs. Greenlee's claim, the court opined that the prosecutor was proceeding on a "cause to be presented" theory. (E.g., *People v. Singh* (1995) 37 Cal.App.4th 1343, 1370 [44 Cal.Rptr.2d 644] [liability under identical former statute for providing false information that caused lawyer to file an insurance claim].) The court then found that there was sufficient evidence to support liability on that theory.

Thus, to recap, the court denied the motion to dismiss on the theory that the two cases against defendant were based on entirely different conduct: the charges in the first case were based on defendant's conduct during the February 5 incident; the charge in the second case was based on his false statements to Esurance on February 9. Later, however, the court held defendant to answer in the second case on the theory that defendant's conduct on February 5 *caused* Mrs. Greenlee to file a false claim. Moreover, defendant could not have been held to answer based on his false statements because evidence of his statements was admitted only for the nonhearsay purpose of explaining Esurance's subsequent actions on Mrs. Greenlee's claim.[9]

Given this procedural history, we return to the question of whether a renewed motion to dismiss after the preliminary hearing would have been granted. It seems clear that the prosecutor could not have opposed a renewed motion on the same ground he asserted before—i.e., that the second case was based *exclusively* on defendant's false statements to Esurance. Indeed, at the preliminary hearing, the prosecutor abandoned exclusive reliance on defendant's false statements as the basis for the charge. Rather, after the preliminary hearing, the factual basis for the second prosecution could only have been defendant's course of conduct on February 5, and more specifically his giving false insurance information to Mrs. Greenlee which caused her to file a false claim.

Because that course of conduct was the basis for all of the charges in the first case, section 654 and the *Kellett* rule would have barred a second

---

[9] We note that although the information charged defendant with violating section 550, subdivision (a)(1), evidence that defendant made false statements would have supported a charge under subdivision (b)(1), which proscribes making false statements to an insurance company in support of another's claim. However, because no admissible evidence of such false statements was taken at the preliminary hearing, the information could not have been amended to charge a violation of section 550, subdivision (b)(1); nor could defendant have been convicted of that offense even if evidence of his false statements were admitted at trial. (§ 1009 [information cannot be amended to charge a crime not shown by evidence taken at the preliminary hearing]; e.g., *People v. Dominguez* (2008) 166 Cal.App.4th 858, 866 [83 Cal.Rptr.3d 284] [reversing conviction because no evidence of crime taken at preliminary hearing].)

prosecution based on that same conduct unless the exception for previously unknown or unavailable evidence applied—i.e., unless the prosecutor in the first case could not have added a charge under section 550, subdivision (a)(1) because additional facts necessary to sustain that charge had not yet occurred or had not been discovered despite the exercise of reasonable diligence. (*Davis, supra*, 36 Cal.4th at p. 558.) Here, the Attorney General makes that claim, arguing that even if the first and second cases were based on the same course of conduct, the second prosecution was not barred because "there was no evidence the prosecutor knew or should have known" about defendant's false statements to Esurance when she was prosecuting the first case.

Before addressing this claim, we review a few cases concerning the unavailable-evidence exception.

In *Davis, supra*, 36 Cal.4th 510, the court cited *U.S. v. Stearns* (9th Cir. 1983) 707 F.2d 391 (*Stearns*) for the proposition that a subsequent prosecution is not barred "when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime. [Citation.] But this exception applies only when the government 'acted with due diligence at the outset but was unable to discover the additional facts necessary to sustain the greater charge.' [Citation.]" (*Davis, supra*, 36 Cal.4th at p. 558.)

In *Stearns, supra*, 707 F.2d 391, a married couple disappeared without a trace from an atoll in August 1974. In October, the defendants were found in possession of the couple's boat. They claimed the couple had drowned. They were later charged with and convicted of theft of the boat. In 1981, one of the victim's bones surfaced along with evidence of foul play, and the defendants were charged with felony murder. They claimed that the double jeopardy clause barred the subsequent prosecution. (707 F.2d at p. 392.) The court applied an exception to the bar where the state is unable to proceed because the facts necessary to sustain the subsequent charge have not been discovered despite the exercise of due diligence. (*Id.* at p. 393.) The court noted that the exception applied "only if relevant facts are discovered after the first prosecution. The government may not take advantage of it unless it acted with due diligence at the outset but was unable to discover additional facts necessary to sustain the greater charge." (*Ibid.*)

In finding the exception applicable, the court noted that authorities had initially suspected foul play, and a nine-person investigative team, including divers, had searched all accessible parts of the atoll for evidence of the couple's disappearance, including campsites, buildings and fixtures on the abandoned naval base, land areas, and a lagoon. However, the search produced no evidence or clues. The court recognized that a more thorough and expensive search using different equipment, bloodhounds, and experts may have been possible, but it opined that "[d]ue diligence did not require these extraordinary methods at this remote site, based on the facts known at the time." (*Stearns, supra,* 707 F.2d at p. 394.) Under these circumstances, the court concluded that the government did not have the facts necessary to sustain the murder charge when the defendants were charged and convicted of theft. (*Ibid.*)

In *Davis, supra,* 36 Cal.4th 510, Davis kidnapped a man, robbed him, and then took his car. The victim reported the incident, and later, Davis was arrested while driving the victim's car. He was charged with and pleaded guilty to a misdemeanor count of unlawfully taking the car. The next year, Davis was jointly prosecuted for both a double murder and the earlier kidnapping and robbery. Davis argued that the prosecution for the earlier offenses was barred because they arose from the taking of the car for which he had already been convicted. (*Id.* at p. 556.) In rejecting this argument, the court found that, notwithstanding reasonable investigative efforts at the time, the prosecution could not have proceeded on earlier charges because neither the victim nor anyone else could identify Davis as the perpetrator. Moreover, the evidence necessary to prosecute him did not exist until after the defendant had already served his misdemeanor sentence, at which time he told a third party how he had obtained the car. (*Id.* at pp. 556–557.)

In *In re Benny G.* (1972) 24 Cal.App.3d 371 [101 Cal.Rptr. 28] (*Benny G.*), the probation officer filed a petition alleging that the minor committed an armed robbery and then an amended petition alleging that the minor was an accessory to the same robbery. A hearing was held only on the original petition, and the court found the allegation not true. The probation officer then filed a new petition reflecting the amended charge of accessory. The court found that allegation true. On appeal, however, the court reversed, concluding that the prosecution of the second petition was barred because both petitions were based on the same course of conduct and involved the same witnesses and evidence. The court observed that "[t]he prosecutor, representing the probation officer, should have become aware early in his investigation of the facts leading to the filing of the initial petition that [the minor's] course of conduct might involve him as an accessory as well as a principal in the robbery. The probation officer testified that prior to the filing of the original petition he possessed the arrest report of the police. At the hearing of the first petition the prosecutor, in response to objection to hearing

this petition in its amended form, advised the court that the allegations of the original petition and those of the amended petition involved basically the same facts and circumstances." (*Benny G., supra*, 24 Cal.App.3d at p. 376.)

With these cases in mind, we turn to the Attorney General's claim that the exception for previously unknown or unavailable evidence applied. The Attorney General argues that the prosecutor in the first case—Andrea Griffin—did not learn about defendant's false statements to Esurance until after defendant had pleaded no contest in the first case, and therefore, she did not have a sufficient basis to add a charge of presenting a false insurance claim under section 550, subdivision (a)(1). To support this argument, the Attorney General cites the declarations filed in opposition to the motion to dismiss.

Ms. Griffin declared that in preparing the first case for trial, she did not review, obtain, or seek records from Esurance. Nor did she ever discuss defendant or the first case with Charlotte Chang, the initial prosecutor in the second case. And when defendant finally pleaded no contest, Ms. Griffin was still unaware that defendant had made false statements to Esurance. She did not learn about them until November or December 2009, when Michael Fletcher, who had taken over the second prosecution from Ms. Chang, told her.

Ms. Chang declared that she was unaware of the first prosecution and never spoke to Ms. Griffin. She first learned about defendant's false statements to Esurance when Mr. Campos called her in June 2009 and said he was investigating what appeared to be a false insurance claim. Ms. Chang arranged to get the Esurance file and assigned an investigator—John Kracht—to investigate. His investigation was not complete until November, at which time the information he had gathered was given to Mr. Fletcher who filed the complaint in December 2009.

These declarations reveal that neither Ms. Griffin nor Ms. Chang knew about defendant's false statements before June 2009. We observe that if Mr. Fletcher had charged defendant with a violation of section 550, *subdivision (b)(1)*—making false statements in support of an insurance claim (see fn. 9, *ante*)—then the Attorney General's focus on when authorities learned about the false statements would be crucial in determining whether the exception applied. However, defendant was charged with causing a false claim to be presented in violation of section 550, subdivision (a)(1). Defendant's false statements were neither the actus reus of the charged offense nor the sine qua non for a conviction. Indeed, there was no admissible evidence

of those statements at the preliminary hearing, the prosecutor argued at that time that defendant could be held liable under the statute because the information he provided to Mrs. Greenlee caused her to file a claim, and the court held defendant to answer on that factual theory. Thus, to determine whether exception applies, we focus not on when prosecuting authorities knew or should have known about defendant's false statements. Rather, we focus on when authorities knew or should have known that defendant caused Mrs. Greenlee to file her claim.

In that regard, the record reveals that Officer Ochoa and Officer Greenlee knew that at the time of the accident, defendant had given Officer Ochoa and Mrs. Greenlee insurance information, implying that her damages and injuries were covered. Officer Greenlee knew that his wife had filed a claim the next day. And the next day, Officer Greenlee inquired about that claim. He learned that there was a problem because the policy did not cover a vehicle bearing the license plate number identified in the police report. Officer Greenlee decided to investigate further. He took the number of the license plate attached to the Ford Ranger and discovered that defendant was not the registered owner of the vehicle to which the plate belonged. This led Officer Greenlee to Sears, where he learned that the license plate belonged on a Sears van that defendant had had access to before he was terminated.

The record further reveals that at the preliminary hearing in the first case, Ms. Griffin elicited testimony from Officers Greenlee and Ochoa about the false insurance information defendant had provided after the accident, Mrs. Greenlee's subsequent claim against defendant's policy, and Esurance's initial response to Officer Greenlee that his wife's claim was not covered. Moreover, at that hearing, Ms. Griffin amended the original complaint to charge defendant with a violation of Vehicle Code section 31 based on the false insurance information he had given to Officer Ochoa.

Given the record, we conclude that Ms. Griffin knew or should have known that defendant had caused Mrs. Greenlee to file a claim with Esurance under suspicious circumstances and that Esurance had initially determined that the claim was not covered. These facts provided a substantial basis to suspect and investigate whether, in addition to the other alleged offenses arising from defendant's course of conduct on February 5, he may also have caused Mrs. Greenlee to file a false claim in violation of section 550, subdivision (a)(1). Moreover, had she investigated further with Esurance, she

would have easily discovered additional evidence—including defendant's false statements—to confirm such a suspicion and charge defendant long before he pleaded no contest. However, the prosecution did not pursue any such investigation with Esurance before the plea.

██ This is not a case like *Davis*, where crucial evidence necessary to charge and convict the defendant did not exist until after the defendant had been convicted in a prior case and served his sentence. Rather, the primary evidence necessary to charge, hold defendant to answer, and convict him under section 550, subdivision (a)(1) existed and was known by the prosecutor at the time the complaint in the first case was filed and certainly by the time of the preliminary hearing.

This is also not a case like *Stearns*, where authorities had reason to suspect the defendants and conducted a reasonably diligent investigation but were unable to discover the evidence necessary to confirm that suspicion despite a reasonably diligent investigative effort. Again, Ms. Chang charged defendant with providing false information to Officer Ochoa, and she knew defendant had also provided it to Mrs. Greenlee, who then filed a claim that Esurance initially determined was not covered. Ms. Chang also knew that defendant had put a stolen license plate on the Ford Ranger that he had been driving when he hit Mrs. Greenlee. Simply put, these circumstances strongly suggested a violation of section 550, subdivision (a)(1) and reasonably diligent further investigation would have confirmed that suspicion. Given these circumstances, we find this case to be more like *Benny G.*, where the second petition was barred.

It follows from our analysis that if defense counsel had renewed the motion to dismiss immediately after the preliminary hearing, the motion would have been granted. Accordingly, we conclude that defendant's claim of ineffective assistance states a prima facie case for relief by writ of habeas corpus.

## V. DISPOSITION

The judgment on appeal is affirmed.

We issue an order to show cause returnable before the superior court directing the Attorney General to show cause why defendant's conviction

under section 550, subdivision (a)(1) for causing a false insurance claim to be filed should not be reversed due to ineffective assistance of counsel based on counsel's failure to renew a motion to dismiss after the preliminary hearing on that charge. (See § 1508, subd. (b).)

Premo, J., and Elia, J., concurred.