Filed 5/30/14  P. v. Suchite CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B249347 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA306421) |
| v. | |
| EDGAR SUCHITE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Sam Ohta, Judge.  Affirmed.

Kathy Moreno, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Connie H. Kan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Edgar Suchite appeals from a judgment of conviction following a jury trial in which he was found guilty of one count of first degree murder and one count of second degree murder. The jury also found true as to both counts allegations that defendant personally and intentionally discharged a firearm which proximately caused the death of the two victims. The court sentenced defendant on count one to life without possibility of parole (LWOP) plus a consecutive term of 25 years to life for the firearm enhancement. The court sentenced defendant on count two to 30 years to life (15 years doubled under the three strikes law) and a consecutive term of 25 years to life for the firearm enhancement. Defendant was sentenced to an additional five years for a prior felony conviction.

On appeal defendant argues that the court erred in admitting into evidence his involuntary statements to the police; the prosecutor committed multiple acts of misconduct in closing argument; defense counsel was ineffective in failing to object to that prosecutorial misconduct; and the court erred in sentencing him for the second degree murder. We reject these arguments and affirm the judgment.

## FACTS AND PROCEEDINGS BELOW

Ezequias Guzman testified that at approximately 1:00 a.m. he and his nephews Eric Salvador, Efrain Martinez and Joaquin Lopez drove to a taqueria on Pico Boulevard. As they sat at an outdoor table eating their tacos, defendant and two other men arrived together. While the other men went to order food defendant began shouting that "if somebody wanted to fight with him to stand up and fight with him." Defendant approached a man who was sitting at a table eating and asked the man: "What are you looking at, you fool?" The man replied that he was not looking at defendant; he was just having dinner. Defendant told the man not to look at him "otherwise I'm going to put two bullets into your head." Defendant also announced: "I will kill anyone who messes with me." As defendant said this, Eric Salvador got up from the table and raised his hand to wipe his mouth. Defendant pulled a gun out of his pants pocket and shot Salvador from a distance of three to five feet.

2

After shooting Salvador defendant ran onto Pico Boulevard. Efrain Martinez chased defendant and grabbed him by his shirt. The two men struggled. Guzman heard two shots in quick succession and then the clicking sound of an empty gun. By then several men from the taqueria surrounded defendant and threw him to the ground Guzman turned to Salvador. He was dead. The police arrived soon after.

Joaquin Lopez testified that he went to the taqueria with his uncle Guzman, his brother Martinez and his cousin Salvador. He heard defendant talking loudly and "being obnoxious." Lopez didn't believe defendant was addressing any of his remarks to him or his family. There were approximately 10 other people at the taqueria at the time. A man sitting at a table by himself was laughing and defendant walked up to the man and asked him what he was laughing at. Lopez heard Martinez tell the defendant "we are just here eating." Immediately afterward Lopez heard gunshots. Lopez thought defendant had just shot his gun in the air. The next thing Lopez remembered was that Martinez was fighting with defendant. Other people started hitting defendant and Lopez started hitting him too. Lopez grabbed a gun from defendant's hand and started beating him with it. Lopez then wiped the gun clean and left it on the ground next to defendant where it was discovered by the police. Lopez later learned that his cousin Salvador and his brother Martinez had been shot.

Humberto and Sergio Armijo testified that they were working at the taqueria when the shootings took place. Both men saw defendant with a gun prior to the shootings and both men saw defendant shoot Salvador. After the shooting they saw Martinez and defendant fighting and struggling for the gun. They both heard more gun shots during the struggle. Humberto testified that defendant was firing his gun as he fought with Martinez.

Martinez was collapsed by a car but still alive when the police arrived. A police officer asked Martinez who shot him. Martinez turned toward defendant, pointed at him and said: "'He did it.'" When an officer approached defendant who was lying on the

3

ground defendant reached for the gun next to him. He let his arm fall back when an officer yelled at him not to reach for it.

Salvador and Martinez died from their gun shot wounds.

## DISCUSSION

**I.      ANY ERROR IN ADMITTING DEFENDANT'S STATEMENT TO THE POLICE WAS HARMLESS BEYOND A REASONABLE DOUBT.**

Defendant contends that the trial court erred in denying his motion to suppress his statements to the police at the hospital where he was being treated immediately after the shootings. Defendant did not confess to the shootings but he did make statements that were inconsistent with his subsequent testimony at trial. Involuntary statements cannot be used in any way against a defendant including to impeach the defendant's trial testimony. (*Mincey v. Arizona* (1978) 437 U.S. 385, 400.)

Defendant argues that the police obtained his statements involuntarily because they insisted on interrogating him for an hour and a half when he told them he didn't want to answer questions and wanted to sleep. During the questioning he was in pain, under the influence of alcohol, a muscle relaxant and propofol, and was diagnosed as "depressed." He also contends the questioning was hostile and the police made threats against him.

We need not decide whether defendant's statements were voluntary or involuntary because even if there was error in admitting defendant's statements, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

Three eyewitnesses (Guzman and the two Armijos) gave similar accounts of the events leading up to the shootings and each of them identified defendant as the person who shot Salvador. Martinez, before he died, identified defendant as the person who shot him. Defendant attempted to resist arrest by reaching for his gun when first confronted by the police.

4

## II. THE CLAIM OF PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT WAS FORFEITED AND THE RELATED CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL CANNOT BE DETERMINED IN THIS APPEAL.

Defendant contends the prosecutor committed misconduct in his closing argument by misstating the law, attacking defense counsel's integrity and misstating the evidence.

The claims are forfeited because defense counsel did not object to these purported errors. (*People v. Gamache* (2010) 48 Cal.4th 347, 371.)

As a backup position defendant claims his counsel provided ineffective assistance in not objecting to the prosecutor's alleged misconduct. The record is not sufficient to allow us to determine whether trial counsel was ineffective for failing to object or whether he had some tactical reason for not doing so. "Under such circumstances, a claim of ineffective assistance is generally rejected on direct appeal and more properly raised in a petition for habeas corpus, which can include declarations and other information outside the appellate record that reveal the reasons for the challenged conduct. [Citation.]" (*People v. Witcraft* (2011) 201 Cal.App.4th 659, 665.)

## III. THE COURT DID NOT ERR IN SENTENCING DEFENDANT ON THE SECOND DEGREE MURDER CONVICTION.

Defendant argues that the trial court erred in sentencing him for the second degree murder conviction in addition to the LWOP sentence for the first degree murder conviction because the conviction for second degree murder created the "special circumstance" of multiple murders that rendered defendant subject to the LWOP sentence. (Pen. Code, § 190.2, subd. (a)(3).) He analogizes to *People v. Bracamonte* (2003) 106 Cal.App.4th 704, 708, in which the defendants were convicted of first degree murder based on the felony murder doctrine. (Pen. Code, § 189.) The court held that the defendants could not be punished for both first degree murders *based on* robbery and the underlying robbery. (Accord, *People v. Meredith* (1981) 29 Cal.3d 682, 696.) *Bracamonte* is inapposite here. Defendant was not convicted of first degree murder *based on* his conviction of multiple murders in this trial. Multiple murders are a "special

5

circumstance" that permits an LWOP sentence for a defendant who has been convicted of first degree murder.  (Pen. Code, § 190.2, subd. (a)(3).)  Furthermore, multiple punishments are not prohibited under Penal Code section 654 when the defendant commits two violent crimes against two different victims.  (*People v. Miller* (1977) 18 Cal.3d 873, 885.)

## DISPOSITION

The judgment is affirmed.


                                        ROTHSCHILD, Acting P. J.

We concur:


        JOHNSON, J.


        MILLER, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.