Filed 6/11/13  P. v. Brown CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>FREDERICK BROWN,<br><br>    Defendant and Appellant. | H037995<br>(Santa Cruz County<br>Super. Ct. No. F21069) |

A jury convicted defendant Frederick Brown of corporal injury upon a cohabitant (Pen. Code, § 273.5, subd. (a))[1] and misdemeanor child endangerment (§ 273a, subd. (b)).  On appeal, defendant argues the child endangerment conviction must be reversed because the trial court inadequately responded to a jury question regarding endangerment of a child's mental health.  In the alternative, defendant contends the child endangerment conviction must be reversed because his trial counsel rendered ineffective assistance in failing to request a clarifying instruction regarding endangerment of a child's mental health.  For the reasons set forth below, we will affirm.

STATEMENT OF THE FACTS AND THE CASE

Defendant and Brandi King began dating in early 2011.  After approximately one month of dating, defendant moved into Ms. King's Hayward home.  Ms. King's four

---

[1] All further unspecified statutory references are to the Penal Code.

children—thirteen-year-old T.W., nine-year-old L.H., seven-year-old W.T., and three-year-old A.M.—lived in the house with defendant and Ms. King. Shortly after defendant moved into the house, he began complaining that Ms. King's children were disrespectful. Defendant also complained that Ms. King was too lenient in her discipline of the children. Ms. King and defendant engaged in "hostile" discussions regarding the children's behavior.

Defendant and Ms. King decided to take the four children on a vacation to Santa Cruz on June 25, 2011. That morning, defendant and Ms. King drank shots of tequila while packing for the trip. Defendant drove Ms. King and the children to Santa Cruz, and they checked into a hotel suite. Defendant and Ms. King drank more tequila in the suite, and then they took the children to the Beach Boardwalk. The children rode the rides until sunset, and then everyone walked back toward the car.

On the way to the car, T.W. asked Ms. King a question, and defendant answered the question. T.W. said, "Can I please talk to my mom? I'm asking my mom." Defendant responded, "You're being very disrespectful." On the drive back to the hotel, defendant yelled, cursed, and told Ms. King that she needed to discipline T.W. for being disrespectful. When they arrived at the hotel parking lot, defendant jumped out of the car, slammed the car door, and walked away from Ms. King and the children.

Ms. King and the four children went back to their suite. The children sat in the living-room area, and Ms. King played with her cell phone in the bedroom area. Defendant entered the suite, walked into the bedroom area, and yelled, "Your children are so disrespectful. How dare you let them disrespect me like that." He slapped the cell phone out of Ms. King's hand and said, "I know you're not trying to call the damn police." Defendant then pushed Ms. King's head back, and she batted his hand away. She tried to walk away from defendant, but he pushed her onto the bed. Defendant held her down and slapped her head and face. He punched her in the face, head, and shoulder

2

area. Ms. King shielded her face and tried to kick him away from her. Defendant pulled her hair so hard that some of it came out of her scalp. She picked up a lamp and hit him with it. She tried to leave the bedroom area, but defendant repeatedly pushed her into a corner. He pushed her into the window, and the window screen broke off. He continued to wrestle with her, but Ms. King eventually fought her way out of the suite.

While defendant was beating Ms. King, L.H. heard Ms. King yell for defendant to stop. L.H. ran into the bedroom area, and he saw defendant hit Ms. King, punch her, and slam her into the wall. L.H. said, "Stop. Don't hit my mom." Defendant continued to hit Ms. King, so L.H. ran out of the suite to find T.W., who had left the suite upon defendant's arrival. L.H. found T.W. in the hallway, and he told T.W. to hurry back to the suite because defendant was hitting Ms. King. L.H. was crying, and he looked scared. T.W. and L.H. ran back to the suite, and T.W. heard Ms. King screaming, "Get off me. Get off me." T.W. saw defendant holding Ms. King down and hitting her. T.W. said, "Get off my mom." T.W. then ran to the lobby to get help. A desk attendant called the police, and T.W began crying.

When police officers arrived at the hotel, defendant was yelling at Ms. King. The officers saw that Ms. King had scratches on her cheek and chest, swelling near her ear, and a torn and bloody toenail. One of the officers spoke to the four children, and he saw that all of the children were upset, distraught, and scared. T.W. cried as she explained how defendant had beaten Ms. King.

Defendant testified that Ms. King drank excessively on the Santa Cruz trip. Defendant explained that Ms. King physically attacked him after he complained about T.W.'s disrespectful attitude. He further explained that he never hit Ms. King, and that he only restrained her from attacking him.

An information charged defendant with infliction of corporal injury upon a cohabitant (§ 273.5, subd. (a); count 1), misdemeanor endangerment of T.W. and L.H.

3

(§ 273a, subd. (b); count 2), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 3), interference with a wireless-communication device (§ 591.5; count 4), and vandalism causing less than $400 damage (§ 594, subd. (a); count 5). The information alleged that defendant had served two prior prison terms (§ 667.5, subd. (b)).

A jury convicted defendant of count 1 and count 2. The jury was unable to reach a verdict on the remaining counts, and the court declared a mistrial on those counts. Defendant admitted the two prior prison terms.

The trial court sentenced defendant to a three-year prison term for count 1 and a concurrent six-month jail term for count 2. On the day of the sentencing, defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues his child endangerment conviction must be reversed because the trial court inadequately responded to a jury question regarding the meaning of the term "child's person or health was endangered" as used in CALCRIM No. 823. Specifically, defendant contends that when the jury asked a question regarding endangerment of a child's mental health, the trial court had a sua sponte duty to provide examples and "draw the line" between behavior that does and does not endanger a child's mental health. We conclude that the trial court adequately responded to the jury's question, and that the trial court was not required to engage in the line drawing that defendant proposes. We therefore find no abuse of discretion in the trial court's response to the jury's question.

In the alternative, defendant argues his child endangerment conviction must be reversed because his trial counsel failed to request a clarifying instruction that drew the line between conduct that does and does not endanger a child's mental health. We conclude that trial counsel's decision to not seek such an instruction was a reasonable tactical decision. Accordingly, we conclude that the child endangerment conviction need not be reversed due to ineffective assistance of counsel.

4

## I. The Trial Court's Response to the Jury's Question

### A. Background

The trial court instructed the jury with CALCRIM No. 823, in relevant part: "The defendant is charged in Count 2 with child abuse in violation of Penal Code section 273a(b). [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1) The defendant, while having care or custody of a child, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered; [¶] AND [¶] 2) The defendant was criminally negligent when he caused or permitted the child to be endangered."

During deliberations, the jury sent the court the following note regarding CALCRIM No. 823: "Can the 'child's person or health was endangered' include mental/emotional health? i.e., Can 'health' include mental/emotional health?" The court sent the following one-word response: "Yes." Defense counsel objected to the court's response, arguing that the court should have simply referred the jury to the original instruction.

### B. Standard of Review

"An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.)

The following principles must guide an appellate court's abuse of discretion analysis: " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 364, p. 420; see *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal

5

principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' (*City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1297-1298.) To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' (*People v. Carmony* [(2004)] 33 Cal.4th [367,] 377.)" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773).)

### C. The Trial Court Did Not Abuse its Discretion

Section 1138 states that when jurors "desire to be informed on any point of law arising in the case," the trial court must provide "the information required." Section 1138 imposes a mandatory duty "to clear up any instructional confusion expressed by the jury." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1212, superseded by statute on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691.)

Although section 1138 imposes "a primary duty to help the jury understand the legal principles it is asked to apply," this "does not mean the court must always elaborate on the standard instructions." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) The court "has discretion to determine what additional explanations are sufficient to satisfy the jury's request for information." (*People v. Smithey* (1999) 20 Cal.4th 936, 1009.) Where the court's response to a jury question is "clear and correct," the court has properly exercised its discretion. (*Id.* at p. 985.)

In the instant case, it is undisputed that section 273a, subdivision (b) prohibits endangerment of a child's mental or emotional health. Section 273a, subdivision (b) specifically proscribes infliction of unjustifiable "mental suffering" upon a child.

6

Moreover, case law confirms that a defendant violates section 273a, subdivision (b) if he or she imperils the mental or emotional health of a child. (See *People v. Burton* (2006) 143 Cal.App.4th 447, 453-457 [substantial evidence supported a section 273a, subdivision (b) conviction where a child experienced mental suffering—as evidenced by his journal entries and problems at school—after witnessing the aftermath of the defendant's attack on the child's mother]; see also *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1453 [a section 273a, subdivision (b) conviction may be "based on the mental suffering resulting from a child being exposed to physical abuse by one parent against the other"].) Thus, the trial court's succinct response to the jury's question accurately informed the jury that the phrase "child's person or health was endangered," as used in the child endangerment instruction, included endangerment of a child's mental or emotional health. Accordingly, because the trial court provided a clear and correct response to the jury's question, the response constituted a proper exercise of the trial court's discretion. (See *People v. Smithey, supra,* 20 Cal.4th at p. 985.)

Defendant argues *People v. Giardino* (2000) 82 Cal.App.4th 454 (*Giardino*) required the trial court, on its own motion, to provide examples and draw the line between behavior that does and does not endanger a child's mental or emotional health. Defendant's reliance on *Giardino* is misplaced.

In *Giardino*, the jury asked the trial court to provide a legal definition of the term " 'resistance' " as used in an instruction for the crime of rape by intoxication. (*Giardino, supra,* 82 Cal.App.4th at p. 464.) In response to the jury's question, the trial court instructed the jury that " '[t]his is an area in which you must use your common sense and experience to determine the everyday meaning of resistance.' " (*Ibid.*) *Giardino* held that the trial court's response constituted an abuse of discretion. (*Id.* at p. 465.) *Giardino* reasoned that "the correct interpretation [of the term resistance] focuses on whether the victim's level of intoxication prevented him or her from exercising judgment," and that

7

the "defendant was entitled to have that concept correctly explained." (*Id.* at p. 466.) In reaching its holding, *Giardino* also noted that a trial court must provide "guidance and clarification" when a jury has difficulty understanding and applying a statute. (*Id.* at p. 466, internal quotation marks omitted.)

Defendant asserts that *Giardino's* "guidance and clarification" language required the trial court to engage in detailed line drawing in response to the jury's question regarding mental and emotional health. Contrary to defendant's assertion, *Giardino* did not hold that a trial court must engage in line drawing when a jury expresses confusion regarding the meaning of a term used in a jury instruction. Rather, *Giardino* held that a trial court erred in providing a legally incorrect response to a jury question. (*Giardino, supra,* 82 Cal.App.4th at pp. 466-467). In the instant case, there was no such misstatement of law. Additionally, although the trial court provided a concise response to the jury's question regarding mental and emotional health, the response nonetheless provided guidance and clarification as contemplated by *Giardino*. Defendant's reliance on *Giardino* therefore is unavailing.

For the foregoing reasons, we conclude that the trial court adequately responded to the jury's question regarding mental and emotional health. We accordingly find that the trial court's response to the jury's question did not constitute an abuse of discretion.

## II. Ineffective Assistance of Counsel

Defendant alternatively argues that his child endangerment conviction must be reversed because his trial counsel failed to request a clarifying instruction regarding endangerment of a child's mental or emotional health. Specifically, defendant contends that trial counsel should have requested an instruction that drew the line between behavior that does and does not endanger a child's mental or emotional health.

8

## A. Background

When discussing the trial court's response to the jury question regarding mental and emotional health, trial counsel argued: "I certainly concede that [section 273a, subdivision (b)], on its face, includes emotional/mental suffering. [¶] Further, I would point out that the CalCrim Jury instructions specifically delineate such. What is not delineated in the instruction is where does one draw the line? And, how is it to be proven? For instance, does crying count? And, for how long would one have to cry? The hypotheticals that could be pondered regarding where one is to 'draw the line' are numerous."

Trial counsel then objected to the trial court's response to the jury question regarding mental and emotional health: "Thus, it is really, as a practical matter, in the jury's realm to draw that line in a case such as this. I believe the court should have simply told the jury that [section 273a, subdivision (b)] has already been defined as previously instructed. I am concerned that the court answering 'yes' to this question is a course of action that could potentially taint the jury regarding where to 'draw the line.' "

## B. Trial Counsel was Not Ineffective

To obtain reversal due to ineffective assistance, a defendant must first show "that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 (*Cunningham*); *Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) Second, the defendant must show that there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*Cunningham, supra,* 25 Cal.4th at p. 1003.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* 466 U.S. at p. 694.)

9

Because the defendant bears this burden, "[a] reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211; see also *People v. Witcraft* (2011) 201 Cal.App.4th 659, 664.) "If the record contains an explanation for counsel's actions, the ineffective assistance claim will fail because we will defer to counsel's decision, and presume it falls within the wide range of reasonable tactical decisions available to defense counsel under similar circumstances" (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1150.) "In order to prevail on such a claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission." (*People v. Ray* (1996) 13 Cal.4th 313, 349.)

In the instant case, the record contains a rational tactical explanation for trial counsel's conduct. Trial counsel's comments show that he wanted the jury to be instructed in general terms, and that he believed giving the jury detailed examples of endangerment of a child's mental health would encourage the jury to convict defendant of child endangerment. Trial counsel's decision to seek vague instructions articulated in general terms—instructions that could potentially cause jurors to doubt whether defendant's behavior fell within the scope of the child endangerment statute—was a reasonable tactical decision to which we must defer. (See *People v. Lucero* (2000) 23 Cal.4th 692, 731 [counsel was not ineffective in failing to seek a clarifying instruction where counsel reasonably concluded such an instruction "would have done more harm than good"].) We therefore conclude that trial counsel did not render ineffective assistance in failing to request an instruction that drew the line between conduct that does and does not endanger a child's mental or emotional health.

Defendant's ineffective assistance claim also fails because defendant does not provide a specific instruction that trial counsel should have requested. Defendant asserts

that trial counsel should have requested an instruction that drew the line between behavior that does and does not endanger a child's mental or emotional health, but defendant does not specify what examples and guidelines should have been included in such an instruction. To prevail on a claim of ineffective assistance of counsel, a defendant must "support his contentions" and establish ineffectiveness as "a demonstrable reality and not a speculative matter." (*People v. Stephenson* (1974) 10 Cal.3d 652, 661.) Here, because defendant does not delineate a specific instruction that trial counsel should have requested, his ineffective assistance claim is merely speculative, and he has failed to meet his burden of proof. (See *U.S. v. Cronic* (1984) 466 U.S. 648, 666 [a defendant "can . . . make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel"].)

Accordingly, for the foregoing reasons, we conclude that trial counsel's conduct fell within the wide range of professional competence. We therefore hold that trial counsel did not render ineffective assistance.

## DISPOSITION

The judgment is affirmed.

11

                                _____

                                           RUSHING, P.J.

WE CONCUR:

_____
                    PREMO, J.

_____
                    ELIA J.