Filed 8/16/16  P. v. Chino CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HECTOR CHINO et al.,<br><br>    Defendant and Appellant. | 2d Crim. No. B262732<br>(Super. Ct. No. KA101002-01,02,03<br>Consolidated with KA102082)<br>(Los Angeles County) |

Hector Chino appeals his conviction, by jury, of shooting at an inhabited dwelling (Pen. Code, § 246)[1], and attempted premeditated murder.  (§§ 664, 187, subd. (a).)  Chino's co-defendant, Miguel Salazar, was tried by the same jury and convicted of the same offenses.  Salazar was also convicted of evading an officer.  (Veh. Code, § 2800.2, subd. (a).)  The jury found that Chino and Salazar committed these offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)), and that a principal in both offenses personally used and discharged a firearm.  (§ 12022.53, subds. (b), (c), (e)(1).)  It found that Chino did not personally use the firearm, but that Salazar did.  (§ 12022.53, subds. (b), (e)(1).)

A third co-defendant, Adrian Hernandez, was tried in the same proceeding by a separate jury.  He was convicted of attempted murder and of the lesser included

---

[1] All statutory references are to the Penal Code unless otherwise stated.

offense of discharging a firearm in a negligent manner.  (§ 246.3.)  The jury further found that Hernandez personally used a firearm, that a principal personally discharged a firearm and that a principal personally used a firearm in committing these offenses.  In addition, the jury found that Hernandez committed the attempted murder for the benefit of a criminal street gang.

The trial court sentenced appellant Chino to a term of 20 years plus life with a minimum parole eligibility date of seven years.[2]  It sentenced appellant Salazar to a term of 23 years plus life, with a minimum parole eligibility date of seven years.[3] Appellant Hernandez was sentenced to a term of 20 years plus life with a minimum parole eligibility date of 15years.

Prior to his conviction here, appellant Chino admitted in juvenile court that, during the same incident, he negligently discharged a firearm in violation of section 246.3.  He now contends his trial for attempted murder and for violating section 246 violated his Fifth Amendment right against double jeopardy, as well as his related right, under section 654, to be protected against multiple prosecutions.  Appellant Chino further contends the sentence imposed for shooting at an inhabited dwelling must be stayed pursuant to section 654 because the same act was punished by the sentence imposed for attempted murder.  Appellant Salazar makes the same argument.  Appellant Hernandez filed a brief in which no issues were raised.[4]  We affirm as to all appellants.

---

[2] Appellant Chino was sentenced to life for the attempted murder conviction (Count 4) plus 20 years for the firearm enhancement (§ 12022.53, subds. (c), (e)(1)), and a concurrent term of seven years for the violation of section 246, plus 20 years for the firearm enhancement.

[3] Salazar's sentence was calculated as follows:  life for the attempted murder conviction, plus 20 years for the firearm enhancement (§ 12022.53, subds. (c), (e)(1)); a consecutive term of three years for the evading conviction (Veh. Code, § 2800.2, subd. (a)); and a concurrent term of seven years for the violation of section 246, plus 20 years for the firearm enhancement.

[4] *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

*Facts*

15-year old L.H. was walking on Nolina Avenue near Dalewood Street in Baldwin Park when a Honda traveling in the opposite direction drove past him. Moments later, the Honda reappeared, again driving south on Nolina. It stopped near L.H. and the passenger in the rear seat rolled down the car window and said, "'Hey, fool, come here.'" L.H. ignored the statement and kept walking. Appellants Hernandez and Chino, who had been sitting in the rear passenger and driver's side seats, got out of the car and walked toward L.H. One of the men pulled a nine-millimeter firearm from his waistband and began shooting at L.H. L.H. ran toward an apartment building where bystanders, who had been barbecuing on a second floor walkway, saw the shooting. The men got back in the Honda and drove off.

Appellants, the occupants of the Honda, which had been stolen, were arrested almost immediately. Baldwin Park Police Officer Adam Acuna saw the car speed down Frazier Street and fail to stop at the intersection of Athol Street. Acuna pursued the Honda. During the pursuit, he heard a radio call about the shooting near Nolina and Dalewood. Acuna reported his pursuit. He briefly lost sight of the Honda but then noticed that it had gone over a sidewalk and collided into a wrought iron fence at an apartment complex on Garvey Avenue. There were no occupants in the Honda when Acuna found it. All three appellants were detained within a few minutes after Acuna found the Honda.

Officers did not locate a victim of the shooting that night. Both Chino and Hernandez told police that Salazar got out of the car with Hernandez, while Chino remained seated. Appellant Hernandez told police that he had a nine-millimeter handgun, which he fired once without intending to hit anyone. Hernandez also admitted he was a member of KHA.

A search of the area where the shooting was reported recovered numerous spent .40 caliber cartridge casings and one spent bullet. Officers also discovered a fired nine-millimeter casing. Searching the route Officer Acuna followed in his pursuit of the Honda, officers found a .40 caliber handgun in the street on Athol, where it crosses the 10

3

Freeway, and a nine-millimeter handgun on an embankment at the Athol overpass of the 10 Freeway. The spent .40 caliber casings were fired from the .40 caliber gun recovered on Athol Street. The nine-millimeter casings were fired by the gun recovered from the embankment. Salazar had gunshot residue on his hands; Hernandez and Chino did not. Latent fingerprints lifted from the Honda tied Hernandez to the rear passenger seat.

Three days after the shooting, on February 20, 2013, Officer Jeffrey Honeycutt was patrolling about one block away from the shooting scene when he saw 15-year old L.H. Honeycutt asked L.H. if anyone had "dumped on," or shot at, L.H. L.H. said, "'Yes, some KHA's dumped on me.'" KHA, or Kings Have Arrived, is a Baldwin Park gang.

L.H. told Honeycutt that he was walking to his cousin's house when he saw the Honda drive past him. A few moments later, the same car was back, driving in the same direction. It slowed down and stopped next to him. The rear seat passenger rolled down the window and said, "'Hey, fool, come here.'" L.H. kept walking. At that point, the person who spoke to L.H. got out of the car. Then, a second person also got out of the car, from the rear seat on the driver's side. The two men were walking toward L.H. L.H. saw the second man, the one who had been sitting on the driver's side, pull a nine-millimeter handgun from his waistband. That person pointed the gun at L.H. and began firing at him. L.H. ran toward a nearby apartment building, located at 12911 Dalewood Street. L.H. also showed Honeycutt where the shooting took place and directed him to a bullet strike in the apartment building wall. Honeycutt passed the information along to the investigating detective, Norman Gonzalez.

Gonzalez prepared three photographic line-ups to aid L.H. in identifying the men who shot at him. Gonzalez went to L.H.'s home address and spoke with his mother. She related that L.H. was not there and said that he was a "runaway", even though he sometimes slept in the house. Gonzalez gave the photo six-packs to Honeycutt and Honeycutt's partner, Steve Mendez, because he thought they were more likely to find L.H., given their working hours and patrol area. While on his regular patrol, Honeycutt kept his eye out for L.H. He intended to have L.H. look at the six packs.

4

A juvenile petition was filed against appellant Chino on February 20, 2013, alleging that he negligently discharged a firearm (§ 246.3) and resisted arrest. (§ 148, subd. (a)(1).) Chino admitted the violation of section 246.3 in juvenile court on March 12, 2013.

No one from law enforcement had contact with L.H. between February 20 and May 18, 2013. Honeycutt testified that he kept an eye out for L.H. while on his regular patrols of the neighborhood, but did not see L.H. for several months. Honeycutt usually carried the six-pack photographic lineups with him on patrol, intending to show them to L.H. if they came into contact, but he did not check hospitals or jails for L.H. On May 18, Honeycutt saw L.H. had a methamphetamine pipe. He arrested L.H. for possession of the pipe, served L.H. with a subpoena to testify at appellant Hernandez's preliminary hearing and had L.H. view the six-pack photographic line-ups that Gonzalez prepared in February. L.H. identified appellant Chino's photograph and said he was "'100 percent positive he shot at me. They call him Grow.'" L.H. also identified appellants Salazar and Hernandez from the photographic line-ups.

Attempted murder charges were filed against appellant Hernandez on May 1, 2013. On June 4, 2013, after L.H.'s identification, a felony complaint was filed against appellant Chino, charging him with attempted murder and shooting at an occupied dwelling.

Appellant Chino's trial counsel moved to dismiss on the ground that the prosecution violated the prohibition against multiple prosecutions imposed by section 654. (*Kellett v. Superior Court* (1966) 63 Cal.2d 822, 825-826.) The trial court denied the motion because it found that Baldwin Park police exercised due diligence in developing the evidence needed to charge Chino with the more serious crimes. (*People v. Davis* (2005) 36 Cal.4th 510, 558.)

Appellant Chino contends that, because he admitted the violation of section 246.3 in the juvenile delinquency proceeding, his subsequent prosecution for attempted murder and shooting at an inhabited dwelling violated his Fifth Amendment right to be free from double jeopardy. He further contends the concurrent terms imposed for his convictions of attempted murder and shooting at an inhabited dwelling violate section 654. Appellant Salazar makes the same argument. Appellant Hernandez filed a *Wende* brief which we will address in the final section of this opinion.

*Discussion*

*Multiple Prosecutions*

Appellant Chino contends his prosecution for attempted murder and shooting at an inhabited dwelling violated his right to be free from double jeopardy, and section 654's prohibition against multiple prosecutions, because he had previously admitted in juvenile court that, in the same incident, he violated section 246.3. We disagree.

"The double jeopardy clause of the Fifth Amendment to the United States Constitution guarantees that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb,' and is made applicable to the states through the due process clause of the Fourteenth Amendment. (*Benton v. Maryland* (1969) 395 U.S. 784, 794.)" (*People v. Fields* (1996) 13 Cal.4th 289, 297.) As the Supreme Court explained in *North Carolina v. Pearce* (1969) 395 U.S. 711, the constitutional prohibition against double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (*Id.* at p. 717, fns. omitted.)

In determining whether one prosecution is for the "same offense" as another prosecution, we apply "the so-called 'elements test,' which is based on a statutory comparison of the crimes." (*People v. Spicer* (2015) 235 Cal.App.4th 1359, 1371, quoting *People v. Scott* (2000) 83 Cal.App.4th 784, 795-796.) This requires us to

6

determine whether the elements of the offense charged in one prosecution are "necessarily included" in those charged in another prosecution. (*People v. Scott*, *supra*, 83 Cal.App.4th at p. 794.) The elements test "is met when all the elements of the lesser offense are included in the elements of the greater offense. (*People v. Lopez* (1998) 19 Cal.4th 282, 288-289.) Under this test, which compares the statutory language, an offense is necessarily included if the crimes are defined in such a way as to make it impossible to commit the greater offense without also committing the lesser. (*People v. Greer*, *supra*, 30 Cal.2d at p. 597.)" (*People v. Scott*, *supra*, 83 Cal.App.4th at p. 794.)

Section 654, subdivision (a) also "bars multiple prosecutions for the same act or omission where the defendant has already been tried and acquitted, or convicted and sentenced." (*People v. Davis* (2005) 36 Cal.4th 510, 557.) As our Supreme Court explained in *Kellett v. Superior Court* (1966) 63 Cal.2d 822, "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (*Id*. at p. 827.)

Both the Fifth Amendment protection against double jeopardy, and the section 654 bar against multiple prosecutions are subject to an exception where the prosecutor is "'"'unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.'"'" (*People v. Scott* (1997) 15 Cal.4th 1188, 1202; see *Brown v. Ohio* (1977) 432 U.S. 161, 169, fn. 7 [discussing analogous exception to federal double jeopardy bar].) . . . [S]ection 654 [does] not bar a later prosecution when the government, despite reasonable efforts, has been unable to discover the facts necessary to sustain a conviction on the more serious crime. (See *United States v. Stearns* (9th Cir.1983) 707 F.2d 391, 393.) But this exception applies only when the government 'acted with due diligence at the outset but was unable to discover the

additional facts necessary to sustain the greater charge.' (*Ibid.*) Whether the government exercised due diligence is a question of fact. (*Id.* at p. 394.)" (*People v. Davis*, *supra*, 36 Cal.4th at p. 558.)

Appellant was charged in the juvenile proceeding with a violation of § 246.3, negligent discharge of a firearm. His subsequent prosecution for attempted murder did not violate his right to be free from double jeopardy because negligent discharge of a firearm is not a lesser included offense of attempted murder. (*People v. Nelson* (2011) 51 Cal.4th 198, 215 ["assault with a deadly weapon and negligent discharge of a firearm are not lesser included offenses of attempted murder, but rather lesser related offenses."].)

Negligent discharge of a firearm is, however, a lesser included offense of shooting at an inhabited dwelling. (*People v. Ramirez* (2009) 45 Cal.4th 980, 985-986.) Appellant Chino's prosecution for the greater offense nevertheless did not violate his right to be free from double jeopardy because, as the trial court correctly concluded, the exception based on unavailable evidence applies. When the juvenile petition was filed against Chino, law enforcement had not yet located a specific victim of the shooting and had no witness who identified or stated that there was more than one shooter. Appellant Hernandez admitted that he fired the nine-millimeter; appellant Chino insisted that he stayed in the car during the shooting. In his first statement to Honeycutt, L.H. indicated that only one person shot at him, corroborating Hernandez's admission. While the prosecution arguably had sufficient evidence at that point to charge Hernandez with attempted murder and shooting at an inhabited dwelling, it lacked evidence that there was more than one shooter or that Chino had fired a gun. After L.H. gave his second statement, identifying appellants and stating that Chino shot at him, the prosecution reasonably believed it had probable cause to charge appellant Chino with attempted murder and shooting at an inhabited dwelling, and that the evidence was sufficient to prove those offenses beyond a reasonable doubt. (*People v. Spicer*, *supra*, 235 Cal.App.4th at pp. 1373-1374.)

8

Nor can we agree that Baldwin Park police officers failed to exercise due diligence in locating L.H. The unavailable evidence exception does not require that law enforcement use extraordinary methods to develop evidence needed for a conviction; it is enough if law enforcement "displayed ordinary diligence in its initial investigation." (*Id.* at p. 1376.) Baldwin Park police officers used ordinary diligence to locate L.H. Within five days of the shooting Detective Gonzales visited L.H.'s home address, where his mother stated that L.H. was a runaway who rarely slept there. Gonzalez prepared separate photographic line-ups featuring each appellant and provided them to Honeycutt, the patrol officer most likely to encounter L.H. in his neighborhood. Honeycutt carried the photographic lineups with him on patrol and kept an eye out for L.H. When he finally located L.H., Honeycutt showed him the lineups as soon as possible. The prosecution filed charges against Chino and Salazar within two weeks after L.H. identified them as participants in the shooting. The trial court properly concluded Baldwin Park police officers used ordinary diligence in their investigation and that the resulting offenses charged against appellant Chino did not violate his Fifth Amendment rights or section 654.

*Multiple Punishments*

Appellants Chino and Salazar contend the trial court should have applied section 654 to stay the terms imposed for their respective convictions of shooting at an inhabited dwelling because that offense arose out of the same conduct that resulted in their convictions of attempted murder. We disagree, because the exception for multiple victims of violent crime applies.

In addition to barring certain multiple prosecutions, section 654 bars the imposition of multiple punishments where a single act or course of conduct, committed with a single intent or objective, forms the basis for multiple convictions because it violates more than one statute. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *Neal v. State of California* (1960) 55 Cal.2d 11, 19.) Section 654 does not, however, "apply to crimes of violence against multiple victims." (*People v. Correa* (2012) 54 Cal.4th 331, 341; *People v. Oates* (2004) 32 Cal.4th 1048, 1063.) This is because "'[a] defendant who

9

commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person.'" (*People v. Oates*, *supra*, 32 Cal.4th at p. 1063.)

Here, appellants Salazar and Chino were convicted of attempting to murder L.H. and of shooting at an inhabited dwelling – the apartment building L.H. was standing in front of at the time. When the shooting occurred, a group of people were outside of the building, barbequing. Bullets fired during the incident hit a wall and metal fence in front of the building. Appellant Hernandez admitted firing a handgun at the building and that it was obvious people were inside the building. Those people were victims of the shooting offense, in addition to L.H. Because there were multiple victims, section 654 allows appellants Chino and Salazar to be punished separately for attempted murder of L.H. and for shooting at other victims in an inhabited dwelling. (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1630-1631; *People v. Cruz* (1995) 38 Cal.App.4th 427, 434-435.)

*Wende Appeal*

We appointed counsel to represent appellant Hernandez in this appeal. After counsel's examination of the record, he filed an opening brief in which no issues were raised.

On October 2, 2015, we advised appellant that he had 30 days within which to personally submit any contentions or issues he wished us to consider. We received no response from appellant Hernandez.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to appellant Hernandez. We are satisfied that appointed counsel has fully complied with his responsibilities and that no arguable issues exist. (*People v. Kelly* ( 2006) 40 Cal.4th 106, 126; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

*Disposition*

The judgments are affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

11

Robert M. Martinez, Judge

Superior Court County of Los Angeles

_____

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant, Hector Chino.

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant, Miguel Salazar.

Thomas K. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant, Adrian Hernandez.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Roberta L. Davis, Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.